UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
BUILDING MANAGEMENT ASSOCIATES, INC.  :
:
                Plaintiff,  :
:     Civil Action No.
       -against-  :     1:23-cv-01340-JLR
:
SALVATORE GIGANTE and LATOYA ALLEN,  :
:
                Defendants.  :
:
------------------------------------------------------------------- X

# DECLARATION OF DAVID G. SAMUELS

      David G. Samuels, an attorney admitted to the courts of the State of New York and to this Court, hereby affirms, deposes and says, pursuant to the penalties of perjury, as follows:

      1.     I submit this Declaration on behalf of non-party SEBCO Development, Inc. ("SEBCO") pursuant to the Court's February 18, 2023 order (Dkt. No. 24), permitting SEBCO to be heard in response to the requests by Plaintiff Building Management Associates, Inc. ("BMA") for a temporary restraining order and preliminary injunction against Defendants Salvatore Gigante and Latoya Allen.

      2.     I am a partner at the law firm of Perlman & Perlman, LLP, attorneys for SEBCO, a non-profit entity dedicated to providing affordable housing and other charitable services in the Bronx, New York.  In June 2022, SEBCO retained my law firm and me as outside corporate counsel, in order to assist SEBCO and its Board of Directors (the "SEBCO Board") with nonprofit compliance and governance issues, as well as to advise on certain serious disputes and obstacles caused by the ongoing professional misconduct of SEBCO's long-time former

attorney, Irwin Siegel.[1]  Siegel now represents BMA and Luigino ("Gino") Gigante (who purports to control BMA since the death of his father, Father Louis Gigante) in connection with the allegations in this Action and BMA's attempts to obstruct SEBCO's ability to terminate its relationship with BMA.  I am, on the basis of this representation of SEBCO, fully familiar with the facts and circumstances set forth herein.

3.  Defendants Salvatore Gigante and Latoya Allen are the two most senior corporate executives and valuable, long-time employees of SEBCO.[2]  Salvatore Gigante is the Chief Operating Officer of SEBCO, and Latoya Allen is SEBCO's Vice President of Operations and Director of Management.  Not only are the claims for injunctive relief against Mr. Gigante and Ms. Allen baseless and without merit; the injunctive relief sought by Plaintiff will, if granted in any respect by this Court, severely threaten SEBCO's ongoing operations and existence as well as the ability of these two valuable executives to continue to provide their vital services to SEBCO.[3]

---

[1] Since SEBCO terminated Siegel in 2022, he has taken numerous hostile and damaging actions against SEBCO, including on matters with respect to which he previously represented SEBCO (thus violating Rule 1.9 of the New York Rules of Professional Conduct).  SEBCO has demanded in writing on multiple occasions that Siegel cease his misconduct.  Not only has he refused to do so, but he continues to escalate his hostilities against his former client.  This lawsuit is the simply the latest attack in Siegel's unrelenting war against SEBCO.

[2] Until recently, Defendants also held positions with Plaintiff BMA.  BMA terminated Mr. Salvatore Gigante's employment on January 9, 2023.  Ms. Allen tendered her resignation to BMA on February 2, 2023, as a result of certain disturbing and disruptive actions taken by Mr. Gino Gigante and attorney Irwin Seigel on behalf of BMA, which caused Ms. Allen to lose confidence in the company, as set forth in the Declaration being submitted by Ms. Allen. Ms. Allen agreed to delay the effective date of her resignation for two weeks in order to provide transitional assistance to BMA and Gino Gigante.  This assistance ended upon the filing of the Complaint in this Action.

[3] SEBCO is asserting a position with respect to the claims against Defendants only with respect to the Fifth Claim in the Complaint (for tortious interference with business relations against Salvatore Gigante), the Sixth Claim (for tortious interference with business relations against Latoya Allen), and the Third Claim against Salvatore Gigante (to the extent that claim suggests

4.      Plaintiff BMA has provided building management services to certain properties that are owned by SEBCO-controlled entities (the "Property Owners"), including the fifteen properties referenced in BMA's complaint and moving papers. BMA alleges that Mr. Salvatore Gigante and Ms. Allen have interfered with BMA's business relationship with SEBCO and the Property Owners, causing them to terminate the building management agreements with BMA (the "Management Agreements"). BMA seeks a temporary restraining order ("TRO") and preliminary injunction ("PI") against Defendants, ostensibly to prevent them from continuing to "interfere" with those relationships, including interfering with BMA's relationships with its employees who have chosen to resign from their positions at BMA and work exclusively for SEBCO.

5.      As set forth move fully below, these allegations are false. SEBCO (through its independent Board of Directors and the Boards of its subsidiaries – the Property Owners) has freely chosen to terminate all of its building management agreements with BMA consistent with what the Board firmly believes are the best interests of SEBCO and pursuant to the express terms of the Management Agreements. Any actions taken by Defendants in that regard are being done at the instructions of their employer, SEBCO, and its Board of Directors and are within the scope of Defendants' employment.

---

that Mr. Gigante's legitimate efforts to assure that SEBCO obtained information and documents from BMA to which SEBCO was and is legally entitled were somehow improper). BMA's First, Second, and Fourth Claims against Salvatore Gigante, and the Third Claim to the extent it cites alleged conduct of Mr. Gigante unrelated to SEBCO, do not appear to implicate SEBCO's interests in any respect. They also do not appear to be relevant to the TRO request, which is predicated on the alleged tortious interference with BMA's business relations.

**The Charitable Mission of SEBCO**

6.     As set forth on its website, SEBCO is a New York charitable organization which since its creation has been a pivotal component in the redevelopment of the Southeast Bronx and Hunts Point community.  Incorporated in New York in 1978, SEBCO's mission has been to support its neighborhood, including by fusing government assistance and the involvement of private resources with its own community development plan, ideas, support and energies.

7.     Since its inception, SEBCO has solely sponsored and or developed numerous affordable housing projects. SEBCO is responsible for the development and construction of over 6,000 new or rehabilitated housing units in approximately 450 buildings throughout the South Bronx. SEBCO operates two homeless shelters under contract with the New York City Department of Homeless Services, and two senior citizen centers under contract with the New York City Department for the Aging.

8.     SEBCO's website explains that SEBCO's successes would not have been possible without the support and generous funding from many governmental agencies and foundations including the U.S. Department of Housing and Urban Development (HUD), the NYC Department Housing Preservation and Development (HPD), the NYS Division of Housing and Community Renewal (DHCR), the NYS Housing Finance Agency (HFA), the Enterprise Foundation (Enterprise) and the Local Initiative Support Corp.  SEBCO has been careful to conform to and comply with the rules, requirements, and oversight of its various funding authorities, and has (as appropriate) made disclosures about its current move to self-management upon its decision to terminate its relationship with BMA, and has sought the required approvals. Plaintiff's uninformed suggestion to the contrary (Gino Gigante Declaration ¶ 58) is baseless.

9.     SEBCO has grown from a small group of community activists into a sizable and sophisticated development company with over 300 employees. From modest origins, SEBCO

has contributed greatly to the City of New York by providing jobs, commerce, recreational facilities and housing for its low and moderate-income residents. SEBCO has had great success, under the leadership of Defendants Gigante and Allen, in carrying out its mission of providing decent, safe and affordable housing.

**SEBCO's Termination Of Its Management Services Agreements With BMA And Move To Self-Management**

10. SEBCO's `decision to terminate the Management Agreements with BMA was not the result of Defendants' "interference," as BMA falsely asserts. These decisions were made after careful consideration and the unanimous vote of the SEBCO Board and the Boards of each respective Property Owner, as reflected in duly adopted board resolutions. Defendant Salvatore Gigante, who holds a seat on SEBCO's Board of Directors, recused himself from those decisions (Salvatore Gigante Declaration ¶ 22), and Defendant Latoya Allen did not participate in these decisions. A copy of an example of one of the Management Agreements is attached as **Exhibit 1**. A copy of an example of one of the notices of termination of a management agreement sent by SEBCO to BMA is attached as **Exhibit 2**.

11. The proper management of its affordable housing projects is a necessary and crucial element of SEBCO's success in the affordable housing area. SEBCO (through its subsidiaries, the Property Owners) has for many years contracted with BMA for the provision of management services. One point that appears to be lost in BMA's submissions is that the Property Owners are BMA's *customers* in this business relationship, and BMA is merely a service provider. BMA has no property right or ownership interest in SEBCO, the Property Owners or the buildings that they control. BMA has no authority over or right to interfere with the decisions made by SEBCO and the Property Owners. All BMA has is a contractual relationship with the Property Owners, which are reflected in the Management Agreements.

This case is, at heart, about whether SEBCO and the Property Owners have the right to terminate their Management Agreements with BMA and make other arrangements for managing the properties.

12.     The primary objective in terminating the Management Agreements with BMA was to move the management function in-house to SEBCO, which SEBCO has every right to do. This decision was largely prompted by (a) the view that Gino Gigante, who took over control and ownership of BMA, lacked the experience and qualifications to run the company (Latoya Allen ("Allen") Declaration pp. 7-8) after the termination of its prior chief executive, Salvatore Gigante, and (b) certain actions taken by Gino Gigante and attorney Irwin Seigel on behalf of BMA, which have made the ongoing management relationships untenable, have intimidated and demoralized employees, and have threatened SEBCO's survival.[4]

13.     The Board of SEBCO therefore determined that the ongoing management relationships with BMA were untenable, and authorized the sending of proper, timely notices to BMA advising of the termination of all of the outstanding agreements.[5]

---

[4] Irwin Siegel has, since his discharge as counsel for SEBCO, engaged in a continuing pattern personally (and upon information and belief, through his client Gino Gigante) to attack and damage the operations of his former client SEBCO and undermine and severely criticize Salvatore Gigante.  His many adverse actions against SEBCO have included, but not been limited to (a) undermining and interfering with a major development project on which he had previously advised SEBCO (while being paid substantial legal fees by SEBCO), (b) refusing to return files and documents of SEBCO which he had accumulated during his decades of representing the organization, (c) generally disrupting SEBCO's operations, (d) intimidating SEBCO's staff and Board members, and, (e) upon information and belief, inducing Gino Gigante to assert defamatory and false allegations against SEBCO and its representatives (including against Salvatore Gigante).

[5] The Property Owners properly terminated the Management Agreements consistent with their terms.  Plaintiff contends that "purported written agreements between the Property Owners and BMA are fake" and that "BMA has been operating the properties as part of its course of conduct for decades without any objection." BMA Compl. ¶ 91.  This argument makes no sense.  Either the Management Agreements are valid and SEBCO complied with the 30-day termination notice provisions, or the Management Agreements are invalid and there are no written contracts

14. Gino Gigante's false allegations concerning the circumstances relating to his entering the building where SEBCO and BMA currently are based (Gino Gigante Declaration p. 7) do not (even if true) provide any basis for granting the relief requested by Plaintiff. Furthermore, the actual conduct of Gino Gigante, Irwin Siegel, and those who accompanied them to SEBCO's offices in January of 2023 (Salvatore Gigante Declaration ¶ 19-20) help to explain why numerous BMA employees thereafter chose to resign their positions. (Allen Declaration pp. 5-8) In this regard, I advised Plaintiff's lead counsel (Mr. Kurtz) of the following in my letter to him dated February 3, 2023:

> Neither I nor anyone at my firm ever contacted the police with respect to the building at 885 Bruckner Boulevard, The Bronx, New York (the "building"). Any claim in the January 23, 2023 email that I personally contacted the police is false.
>
> On the dates that Mr. Siegel and Lugino Gigante entered SEBCO's offices, SEBCO properly contacted the police for multiple good reasons. First, Mr. Siegel and Luigino Gigante attempted to gain unauthorized access to Salvatore Gigante's locked office when they knew he was not present, despite the fact that SEBCO has a valid lease for the premises. In addition, due to their intimidating behavior, a staff member was induced to give them access to Salvatore Gigante's locked office for fear that they would break the lock on his office door. Luigino Gigante and an individual who accompanied them then rummaged through the office and removed various items without consent. Second, when Mr. Siegel and Luigino Gigante entered the building, they were accompanied by individuals brandishing firearms and acting in an intimidating manner, which caused extreme distress, trauma, and disruption to SEBCO's employees and operations. Third, one of the armed individuals whom Mr. Siegel and Luigino Gigante brought into the building was subsequently arrested for impersonating a police officer on the same afternoon (and he was allegedly a dangerous individual with dozens of prior arrests). Fourth, after Mr. Siegel and

---

between BMA and the Property Owners. If the latter, then the 30-day termination notices provided more than reasonable notice to terminate the non-existent contractual relations between the Property Owners and BMA. BMA cites no authority to support the idea that "a course of conduct" can never be terminated. In either case, it is not disputed that these are properties of the Property Owners, and that SEBCO and the Property Owners had the right in their sole discretion to end their relationships with a property manager with which they no longer wished to have any dealings of any kind.

Luigino Gigante brought these armed individuals into the building, staff members found [items that appeared to be] a firearm, ID, and Badge in a SEBCO stairwell. This was very frightening to the staff members, and the discovery was necessarily reported to the police. It was later learned that the items were left by one of the armed individuals who was brought into the building by Mr. Siegel and Luigino Gigante. Fifth, Irwin Siegel threatened several members of the SEBCO staff with dismissal if they did not comply with certain demands and he otherwise conducted himself at times in a threatening, bellicose, and outrageous manner while in the presence of SEBCO's staff members.

Contrary to your clients' claims, SEBCO never denied Luigino Gigante access to the building or to the offices or records of the companies which he or the Estate owns or controls. He or his representatives were provided with assistance in attempting to access the records of one or more of such companies.

15. Notwithstanding the unsubstantiated hearsay allegations made in Plaintiff's Complaint and moving papers, there is no evidence that any executive or employee of SEBCO interfered with BMA's relationships with its former employees or induced any of those former employees to resign from their positions with SEBCO. (See Allen Declaration pp. 9-10, 12; Salvatore Gigante Declaration ¶ 21.) Attached as **Exhibit 3** are copies of resignation letters submitted to BMA from a number of its former employees, including Defendant Latoya Allen. These resignation letters make clear that the conduct of Gino Gigante and Irwin Siegel (and others), the lack of access to bank and financial information making it difficult or impossible to do their jobs, and the general sense of insecurity were among the factors which caused BMA employees to resign from their positions. (Allen Declaration pp. 9-10, 12) These factors are demonstrated by the following explanations quoted from the attached resignation letters of some of the departing employees, as set follows:

   a. Gloria Allen wrote in part: "Since the hostile takeover of the BMA office Monday January 9th 2023 working here has been stressful and I feel completely unsafe and

uncomfortable. The way this was handled was tasteless and disrespectful. To have armed gunman in the office, one being a convicted felon is crazy. Anything could have happened to us."

b. Brian Velez wrote in part: "[W]ith Mr. Geno Gigante taking over as president of Building Management Associates I don't feel safe anymore. Mr. Geno Gigante came into the office with armed guards and ransacked Mr. Sal Gigante's office, which was totally unprofessional."

c. Jaime Diaz wrote in part: "During my 25 years employed with BMA, Inc., I have seen many changes in management, but never have I experienced such a hostile takeover like the one we recently witness. It is clear that the new management is insensitive to the staff's emotions and lacks an understanding of the impact of their decisions on their employees. This change has led to a decrease in morale, motivation, and productivity, as well as an increase in conflict, tension, and stress levels."

d. Defendant Latoya Allen wrote in part (to Gino Gigante): "Unfortunately, the past month has been very unsettling. As I have expressed to you after the incident which occurred on 1/9/2023, the staff has been uneasy, coming to me almost every day expressing their concerns of job security."

Ms. Allen also wrote: "About three weeks ago staff came to me again stating they were unable to see bank information and if this meant anything concerning their employment… [Y]ou advised me that the staff's bank visibility issue would be

        corrected the following day… [H]owever, this situation was not rectified after now three weeks. Two staff members have resigned."[6]

    e.    Jolanda Kendricks wrote in part: "[L]eading up to my decision of resignation, within the past couple of weeks due to new structure within the company of not having access to bank information as I had before, allow me to not work as efficient within the company and feeling my job is not secure."

    f.    Celina Santana wrote in part: "I feel that my position and duties are insecure, not having access to all the necessary information to complete my work in a timely manner."

**The Application For A TRO And Preliminary Injunction Should Be Denied**

16.    It appears that BMA is attempting, through this Action and the TRO/PI, to prevent SEBCO from exercising its contractual and legal right to terminate the Management Agreements and transition to self-management in furtherance of its charitable mission. In so doing, BMA attempts to invoke the name of the founder of SEBCO and former owner of BMA -- Father Louis R. Gigante ("Father G') -- to suggest that SEBCO and its subsidiaries are somehow tied to BMA in perpetuity without any right to make decisions about the management of their own properties.

17.    However, as set forth above, SEBCO is a nonprofit, charitable New York corporation, and it is not a "business" of Gino Gigante, or the late Father G, or anyone else.

---

[6] As Ms. Allen further explains at page 6 of her Declaration (paragraphs 37-39): "On or about January 17, 2023, before SEBCO and the Property Owner terminated BMA, … Gino Gigante cut off all access to the bank accounts relating to the managed properties. None of the BMA employees were able to access the accounts, which they needed to perform the necessary management functions for the managed properties. Significantly, as of my recent departure from BMA, access to those bank accounts still has not been restored."

10

SEBCO's Board members have a right, and indeed a fiduciary duty under New York law,[7] to oversee the affairs and operations of SEBCO in a manner calculated to best achieve the corporation's charitable mission and objectives. In severing ties with BMA while exercising their fiduciary duties, SEBCO's independent Board members and the board members of the Property Owners have acted properly and appropriately.[8] SEBCO denies that the decisions of its independent Board members were motivated or made based on improper conduct or any wrongful act of either of the Defendants in any respect. Similarly, Mr. Gigante and Ms. Allen as corporate officers of SEBCO have a fiduciary duty to carry out the instructions provided to them by the SEBCO Board, including implementing the termination of the Management Agreements with BMA and moving SEBCO promptly to self-management.

18.    To be clear, the SEBCO Board and the Boards of the SEBCO's subsidiaries do not wish or intend to maintain any relationship with BMA in any respect. Accordingly, they have properly terminated their relationships with BMA. However, the TRO and preliminary injunction sought by BMA against Defendants would, as set forth in Plaintiff's proposed order to show cause, preclude Defendants from (1) "[i]nterfering with BMA's management of the fifteen properties" which SEBCO seeks to move to self-management and (2) "[t]ransferring, or seeking to transfer, management of any of the Properties away from BMA to any other individual or entity owned, controlled and/or managed by Defendants." If, as sought by Plaintiff in its

---

[7] An authoritative guide for nonprofit directors in New York which includes a discussion of fiduciary obligations is <u>Board Liability</u> (Moyer Bell and its subsidiaries 2007), written by Plaintiff's own lead counsel in this Action, Daniel L. Kurtz.

[8] SEBCO denies that Salvatore Gigante "controls" SEBCO (Gino Gigante Declaration ¶ 55), and there is no evidence that any of the Board members of SEBCO (other than Salvatore Gigante, who recused himself from any vote affecting SEBCO's relationship with BMA and also fully disclosed his relationship with BMA) has a conflict of interest in any respect.

application for a TRO and PI, Mr. Gigante and Ms. Allen (who are managers of SEBCO) are enjoined by this Court (even temporarily) from implementing the SEBCO Board's directions and carrying out their obligations, SEBCO would be prevented from implementing promptly the self-management of its properties which it deems crucial to continuing to carry on its mission.

19. BMA is a for-profit company owed by Gino Gigante and his late father's estate, of which Gino Gigante is the ultimate residuary beneficiary. (Gino Gigante Declaration ¶ 91) SEBCO (through its subsidiaries) has been BMA's client and contractual partner. BMA has no right or entitlement to force SEBCO or its subsidiaries to maintain that relationship, and SEBCO (consistent with the determination of its Board) had every right in its absolute discretion to terminate the relationships with the for-profit management company in which it had lost confidence.

20. BMA makes much of the fact that Father G was a founder and past Chair of SEBCO. While Father G's essential role in founding SEBCO and developing its mission cannot be understated, that legacy does not make Gino Gigante the sole heir to Father G's vision. Furthermore, it does not give Gino Gigante the right to strip SEBCO of its autonomy as a nonprofit entity nor to subordinate SEBCO to the interests of a for-profit entity that Gino Gigante controls.

21. The SEBCO Board fully supports its two top executives (the Defendants herein), and its operations will be hindered if its executives are enjoined from doing what the Board wants them to do.

22. There is no evidence that either of the Defendants interfered with BMA's relationships with its employees, and there is substantial evidence (as set forth above) that it was

the conduct of Gino Gigante, Irwin Siegel, and others that contributed to the voluntary decisions of a number of BMA employees to resign.

## Conclusion

23. SEBCO is not a "business" of Gino Gigante or his late father, and neither BMA nor Gino Gigante has legal standing to prevent SEBCO's Board from carrying on its operations as the SEBCO Board deems appropriate, either directly or through the pretext of seeking to enjoin SEBCO's officers from carrying out their duties.

24. Given both the baseless nature of Plaintiff's claims against Defendants and the significant harm that a TRO/PI would cause to SEBCO and its ability to carry out its charitable mission, it is essential that Plaintiff's motion for a TRO and PI be denied in all respects.

Dated: New York, New York
       February 22, 2023

_____
David G. Samuels