UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BUILDING MANAGEMENT ASSICIATES, INC.,

       Plaintiff,                                        Civil Action No.:
                                                              1:23-cv-01340-JLR

   vs.

SALVATORE GIGANTE and LATOYA ALLEN,

       Defendants.
-------------------------------------------------------------------X

## DEFENDANT SALVATORE GIGANTE'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

Stefan B. Kalina, Esq.
Joseph B. Teig, Esq.
**COX PADMORE SKOLNIK & SHAKARCHY LLP**
630 Third Avenue, 23rd Floor
New York, NY  10017
Tel: (212) 953-6633
Fax: (212) 949-6943
Email: kalina@cpsslaw.com
        teig@cpsslaw.com
*Attorneys for Defendant Salvatore Gigante*

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS** ................................................................................................................. i

**TABLE OF AUTHORITIES** ......................................................................................................... ii

**PRELIMINARY STATEMENT** .................................................................................................... 1

**FACTUAL BACKGROUND** ......................................................................................................... 4

**LEGAL ARGUMENT** ................................................................................................................... 4

**I.   STANDARD FOR TEMPORARY RESTRAINING  ORDER AND
      PRELIMINARY INJUNCTION** ........................................................................................ 4

**II.  PLAINTIFF FAILS TO DEMONSTRATE IRREPARABLE HARM** ........................ 5

**III. PLAINTIFF FAILS TO DEMONSTRATE
      A LIKELIHOOD OF SUCCESS ON THE MERITS** ....................................................... 8

**IV.  THE BALANCE OF THE HARDSHIPS
       DOES NOT TIP DECIDEDLY IN PLAINTIFF'S FAVOR** ........................................ 11

**V.   THE PUBLIC INTEREST WOULD BE
       DISSERSED BY THE ENTRY OF A TEMPOIRARY
       RESTRAINING ORDER OR A PRELIMINARY INJUNCTION** ........................... 12

**CONCLUSION** ............................................................................................................................ 13

## **TABLE OF AUTHORITIES**

**Cases** **Page**

*1234 Broadway LLC v. W. Side SRO Law Project*,
　86 A.D.3d 18 (1st Dep't 2011) ............................................................................................... 5

*Ability Search, Inc. v. Lawson*,
　556 F. Supp. 9 (S.D.N.Y. 1981), *aff'd*, 697 F.2d 287 (2d Cir. 1982) ......................................... 9

*Alsheimer v. Evarts*,
　289 A.D.2d 1004 (4th Dep't 2001) ......................................................................................... 9

*Andino v. Fischer*,
　555 F. Supp. 2d 418 (S.D.N.Y. 2008) ..................................................................................... 5

*Barbagallo v. Marcum LLP*,
　820 F. Supp. 2d 429 (E.D.N.Y. 2011) ..................................................................................... 9

*Basank v. Decker*,
　449 F. Supp. 3d 205 (S.D.N.Y. 2020) ..................................................................................... 5

*Beirne Wealth Consulting Services, LLC v. Englebert*,
　2020 WL 2020 WL 506639 (S.D.N.Y. 2020) ......................................................................... 7

*Carvel Corp. v. Noonan*,
　3 N.Y.3d 182 (N.Y. 2004) .................................................................................................. 8, 9

*Cnty. of Nassau v. Leavitt*,
　524 F.3d 408 (2d Cir. 2008) ................................................................................................... 5

*Danielson v. Local 275*,
　479 F.2d 1033 (2d Cir. 1973) ................................................................................................. 6

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
　559 F.3d 110 (2d Cir. 2009) ................................................................................................... 5

*Foster v. Churchill*,
　87 N.Y.2d 744 (N.Y.1996) ..................................................................................................... 9

*GE Transp. (Shenyang) Co. v. A-Power Energy Generation Sys., Ltd.*,
　No. 15 Civ. 6194 (PAE), 2016 WL 3525358 (S.D.N.Y. June 22, 2016) ................................ 12

*Guard-Life Corp. v. Parker Hardware Mfg. Corp.*,
　50 N.Y.2d 183 (N.Y. 1980) .................................................................................................... 9

*Hernandez v. Kwiat Eye & Laser Surgery, PLLC*,
　No. 1:20-CV-42 (FJS/CFH), 2023 WL 372105 (N.D.N.Y. Jan. 24, 2023) .............................. 9

*Home It, Inc. v. Wen*,
　2020 WL 353098, (E.D.N.Y. Jan. 21, 2020) ......................................................................... 12

*Jacobson & Co. v. Armstrong Cork Co.*,
　548 F.2d 438 (2d Cir.1977) .................................................................................................. 12

*Mohawk Maintenance Co., Inc. v. Kessler*,
　52 N.Y.2d 276 (N.Y. 1981) .................................................................................................... 9

*Reuters Ltd. v. United Press Int'l, Inc.*,
 903 F.2d 904 (2d Cir. 1990) ............................................................................................. 12

*Rodriguez ex rel. Rodriguez v. DeBuono*,
 175 F.3d 227 (2d Cir. 1999) ............................................................................................... 5

*Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co.*,
 749 F.2d 124 (2d Cir. 1984) ............................................................................................... 6

*RxUSA Wholesale, Inc. v. Dep't of Health & Hum. Servs.*,
 467 F. Supp. 2d 285 (E.D.N.Y. 2006) ................................................................................ 6

*Soap Opera Now, Inc. v. News Am. Pub. Inc.*,
 No. 90 CIV. 2631 (RJW), 1990 WL 124335  (S.D.N.Y. Aug. 17, 1990) .................................. 6

*Sound Around Inc. v. Shenzhen Keenray Innovations Ltd.*,
 No. 22-cv-6943, 2022 WL 17811475 (E.D.N.Y. Dec. 18, 2022) ........................................ 5

*Stamack, Inc. v. Romero*,
 No. 0118875/2006, 2007 WL 2815377 (Sup Ct NY Cty Aug. 08, 2007) ......................... 10

*Ticor Title Ins. Co. v. Cohen*,
 173 F.3d 63 (2d Cir. 1999) ................................................................................................. 7

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
 60 F.3d 27 (2d Cir. 1995) ................................................................................................... 6

**PRELIMINARY STATEMENT**

Defendant Salvatore Gigante ("Sal"), by and through his attorneys, Cox Padmore Skolnik & Shakarchy LLP, hereby submit this Memorandum of Law in opposition to the Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") of Plaintiff Building Management Associates, Inc. ("Plaintiff" or "BMA").

In its Motion, BMA argues that absent immediate injunctive relief, it will be irreparably harmed by the loss of the property management business of certain Housing Development Fund Corporation ("HDFC") affordable housing units that are owned by 15 entities (the "Property Owners"). Plaintiff alleges that Sal, who BMA fired in January 2023 after Sal had worked there for 18 years, has (i) caused all of the HDFC property owners to issue notices terminating their management arrangements with BMA; (ii) solicited BMA employees to join him at a "new company"; and (iii) contacted BMA vendors to transfer their business to his "new company."

BMA further argues that based upon those "facts," BMA is likely to succeed on the merits of its claim of tortious interference with business relations against Sal, that the balance of the hardships favors BMA, and that the public interest also favors BMA.

Nothing could be further from the truth. There is no "new company," and Sal has neither caused any of the Property Owners to terminate their relationships with BMA, nor solicited any BMA employees to join him at any "new company."

As affirmatively alleged by BMA, the 15 Property Owners are all controlled by non-party SEBCO Development Inc. ("SEBCO").

As set forth in the each of the accompanying Declaration of Salvatore Gigante ("Sal Decl."), the Declaration of Latoya Allen ("Allen Decl."), the Declaration of David G. Samuels ("Samuels Decl.") and brief filed on behalf of non-party SEBCO ("the SEBCO Brief"), all also

being filed in opposition to the Motion, the decision to terminate the building management agreements with BMA was not the result of any untoward "interference" by Sal (or Latoya). Rather, those decisions were made by SEBCO's Board of Directors and the Boards of each respective Property Owner after careful consideration, as reflected in duly-adopted board resolutions. In fact, as set forth in the foregoing Declarations and in the SEBCO Brief, although Sal and Latoya have both long worked for SEBCO, neither had any role in the determinations to terminate the BMA management agreements. Indeed, even though Sal holds a seat on SEBCO's Board of Directors, he expressly recused himself from those decisions.

SEBCO's primary objective in terminating its management agreements with BMA was to move the management function in-house to SEBCO, as is its right. SEBCO has also hired certain BMA employees in aid of that management function. These decisions were largely prompted by certain actions taken by Mr. Luigino "Gino" Gigante, who has no property management experience, and attorney Irwin Seigel, on behalf of BMA, which have made the ongoing management relationships untenable, have intimidated and demoralized employees, and have threatened SEBCO's very survival. It appears that BMA is attempting, through this action and the instant Motion, to prevent SEBCO from exercising its contractual and legal right to terminate the management agreements and transition to self-management.

The cases cited by BMA in support of the Motion are largely inapposite, as they relate to situations where former employees violated non-compete and non-solicitation provisions of their employment contracts. Here, even if it is true SEBCO, for whom Sal and Ms. Allen continue to work, has hired and may seek to hire certain former BMA employees and to reach out to BMA vendors to help SEBCO to manage the properties for the Property Owners, it is not even alleged that Sal (or Latoya) had an employment contract with BMA with any such restrictive covenants.

Indeed, Sal and Ms. Allen each confirm in their respective Declarations that they were under no such restrictions upon being terminated by BMA.

The situation here is not analogous to Coke poaching customers and executives from Pepsi. Both Sal and Latoya have worn two hats, working for many years for both SEBCO and BMA. Those entities worked harmoniously, out of the same offices, to oversee and manage the numerous affordable housing projects sponsored or developed by SEBCO. Upon Gino's takeover of BMA and termination of Sal, as described in greater detail in the accompanying Declarations and SEBCO Brief, that harmonious relationship came to an abrupt end. In response, SEBCO determined that in needed to take the management of the properties in-house. Sal and Latoya hafe not set up a competitor to BMA; they have merely continued to perform their fiduciary duties for SEBCO, in service of Father Gigante's vision for affordable housing in the Bronx.

BMA cannot establish a likelihood of success on its claim of tortious interference with business relations against Sal – the only claim against Sal at issue in the instant Motion. One of the required elements for such a claim under New York law is that that the defendant acted solely out of malice or used unlawful or wrongful means that amounted to a crime or independent tort.

However, even a self-serving economic motive will defeat a claim for tortious interference. Here, as shown in the Sal Decl., the Allen Decl., and the Samuels Decl., on behalf of non-party SEBCO, Sal (and Latoya) at all relevant times since their termination have been acting in their roles as SEBCO officers and employees, and SEBCO and the 15 Property Owners independently determined that it is in their best economic interest to sever their ties with BMA. SEBCO (even as employers of Sal and Latoya) is free to engage in the business of taking the management of the Properties in-house, including hiring former employees of BMA and vendors to assist in that management function. Because Plaintiff cannot establish a likelihood of success on the merits –

or even sufficiently serious questions going to the merits – of their tortious interference claim, the Motion must be denied on that basis alone.

BMA also cannot establish that the balance of the equities falls in its favor or that the public interest will be disserved absent injunctive relief. If an injunction issues, Sal, SEBCO, and the Property Owners will all be harmed, reputationally (which is irreparable) and in the operation of their respective employment and business functions in managing and servicing the Property Owners and their tenants. Indeed, the injunctive relief sought by BMA will cause the very harm to Father Gigante's legacy that Plaintiff purportedly seeks to avoid. The public interest would be disserved as well, since even temporary injunctive would interfere with SEBCO's contractual rights. Moreover, the owners and tenants Properties will be ill-served if the Court allows BMA to continue to attempt to manage the properties under the unproven, inexperienced "leadership" of Luigino Gigante, damaging the reputations of SEBCO (and Sal) in the process, which is irreparable harm as a matter of law.

## FACTUAL BACKGROUND

In the interest of economy and brevity, the Sal Decl., Allen Decl., the Samuels Decl., and the SEBCO Brief, which set forth the true factual background of this case in greater detail and refute many of the relevant allegations set forth in Plaintiff's declarations, are incorporated herein by reference in their entirety.

## LEGAL ARGUMENT

### I. STANDARD FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

"A party seeking a preliminary injunction must establish, by clear and convincing evidence: (1) a likelihood of ultimate success on the merits; (2) that the plaintiff is likely to suffer irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the

plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of the injunction." *Sound Around Inc. v. Shenzhen Keenray Innovations Ltd.*, No. 22-cv-6943, 2022 WL 17811475, at *2 (E.D.N.Y. Dec. 18, 2022); *Cnty. of Nassau v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008). "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sound Around*, 2022 WL 17811475, at *2 (emphasis in original). Because "[a] preliminary injunction substantially limits a defendant's rights and is thus an extraordinary provisional remedy requiring a special showing," it is only granted in limited circumstances. *1234 Broadway LLC v. W. Side SRO Law Project*, 86 A.D.3d 18, 23 (1st Dep't 2011).

"It is well established that in [the Second] Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Basank v. Decker*, 449 F. Supp. 3d 205, 210 (S.D.N.Y. 2020) (quoting *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)).

## II. <u>PLAINTIFF FAILS TO DEMONSTRATE IRREPARABLE HARM</u>

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction," requiring the movant to show such injury is "likely" before the other elements may be considered. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted); *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999). To establish irreparable harm, "[p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* Absent "extraordinary circumstances," injunctions are also unavailable where there is an "adequate remedy at law, such as money damages." *Id.* Courts have "found irreparable harm where a party is threatened with the loss of a business," particularly when the "very viability" of the business is

at risk. *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37-38 (2d Cir. 1995).

The loss of a business constitutes irreparable injury sufficient to satisfy the preliminary injunction standard. *Soap Opera Now, Inc. v. News Am. Pub. Inc.*, No. 90 CIV. 2631 (RJW), 1990 WL 124335, at *4 (S.D.N.Y. Aug. 17, 1990) (citing *Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co.*, 749 F.2d 124, 125-26 (2d Cir. 1984); *Danielson v. Local 275*, 479 F.2d 1033, 1037 (2d Cir. 1973).

"However, these cases stand for the proposition that the loss of a business, and not simply 'loss of business,' constitutes irreparable harm. *Id.* Thus, to satisfy [the irreparable harm] element of the standard, [a] plaintiff must demonstrate that [it] is threatened with going out of business entirely." *Id.* "Irreparable harm may be found where the moving party makes a 'strong showing that economic loss would significantly damage its business above and beyond a simple diminution in profits.'" *RxUSA Wholesale, Inc. v. Dep't of Health & Hum. Servs.*, 467 F. Supp. 2d 285, 301 (E.D.N.Y. 2006).

Here, according to BMA's moving papers and its website (https://bmamanagement.com/), "BMA has grown into a profitable company with more than 125 employees that manage not only SEBCO's HUD portfolio but also properties acquired from New York City's Department of Housing Preservation and Development, the New York City Housing Authority, as well as national institutions such as the Enterprise Foundation and private investors."

Thus, the potential loss of the SEBCO property management business, and the fact that 9 out of BMA's "more than 125" employees have resigned, as alleged by BMA, merely represents a potential "simple diminution in profits" of BMA, and not the viability of the entire enterprise, which is the sort of irreparable harm required for the grant of a TRO or preliminary injunctive relief.

The Court should also note that the cases cited by Plaintiff for this prong of the standard are all distinguishable and inapposite, as they all relate were instances where the party the plaintiff sought to enjoin had executed agreements containing restrictive covenants and an acknowledgement that the breach thereof would be irreparable harm. Moreover, none of them deal with a situation as that present here – where a company is choosing to take the management function in-house, as opposed to where an ex-employee is starting a comp0eting business or moving to a competitor.

In *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999), a TRO and Preliminary Injunction were granted where the defendant had executed an employment agreement containing a covenant not to compete that included an acknowledgement that should the employee breach the non-compete provision, it would cause irreparable injury entitling Ticor to injunctive relief. *Title Ins. Co.*, 173 F.3d at 69 66 (2d Cir. 1999).

*Beirne Wealth Consulting Services, LLC v. Englebert*, 2020 WL 2020 WL 506639 (S.D.N.Y. 2020), also cited by Plaintiff, is inapposite for the same reasons. In *Beirne*, it was alleged that the defendants signed a number of non-solicitation and non-compete agreements that restricted their use of Beirne's proprietary information and forbid them from soliciting or servicing former Beirne clients for a term of two years should they leave the firm. Their agreements also provided that should the defendants breach the agreement, Beirne would suffer irreparable harm and that money damages would not be enough to maintain the status quo. It was on the basis of those agreements that the court issued a preliminary injunction. *See Beirne*, 2020 WL 506639 at *1-2.

Here, by contrast, it is not alleged that Sal (or Latoya) was a party to any employment agreement with BMA containing any non-compete or non-solicitation provisions, let alone

7

containing any acknowledgment that the breach of any such provisions constituted irreparable harm justifying injunctive relief. In fact, both Sal and Latoya state in their respective Declarations that they were not parties to employment agreements with BMA containing any such restrictive covenants.

At bottom, even based on the facts as alleged by Plaintiff – which are largely controverted by the Declarations and SEBCO Brief submitted herewith, Plaintiff cannot establish that it will incur irreparable harm absent injunctive relief. Absent irreparable harm, the Court need not even consider the other factors for a TRO or preliminary injunction; the Motion should simply be denied.

### III. PLAINTIFF FAILS TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS

The only claim in Plaintiff's Complaint as against Sal (and Ms. Allen) that is relevant to the instant Motion is Plaintiff's claim for tortious interference with business relations, because its other claims (conversion/misappropriation, breach of fiduciary duty, breach of promissory note) all merely seek monetary relief.

To prevail on a claim for tortious interference with business relations under New York law, a party must establish 1) that it had a business relationship with a third party; 2) that the defendant knew of that relationship and intentionally interfered with it; 3) that the defendant acted solely out of malice or used unlawful or wrongful means that amounted to a crime or independent tort; and 4) that the interference caused injury to the business relationship. *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (N.Y. 2004).

Unlawful or wrongful means requires "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract."

8

*Guard-Life Corp. v. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (N.Y. 1980).

The plaintiff bears the burden of proving that the defendant's conduct was motivated solely by malice, or, failing that level of malice, use[d] dishonest, unfair, or improper means to damage the relationship between the plaintiff and third party. *Hernandez v. Kwiat Eye & Laser Surgery, PLLC*, No. 1:20-CV-42 (FJS/CFH), 2023 WL 372105, at *11 (N.D.N.Y. Jan. 24, 2023) (internal citations omitted).

Moreover, where there is a proper purpose for the defendant's actions, such as a self-serving economic motive, that will defeat a claim for tortious interference with business relationships. *Carvel Corp.*, 3 N.Y.3d at 191; *Foster v. Churchill*, 87 N.Y.2d 744, 750 (N.Y.1996) ("economic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality").

In the absence of a covenant not to compete, a former employee is not barred from engaging in a competing business with his former employer. *Mohawk Maintenance Co., Inc. v. Kessler*, 52 N.Y.2d 276, 283 (N.Y. 1981); *Alsheimer v. Evarts*, 289 A.D.2d 1004 (4th Dep't 2001) ("In the absence of a covenant not to compete, plaintiffs are not barred from engaging in a competing business); *Ability Search, Inc. v. Lawson*, 556 F. Supp. 9, 15 (S.D.N.Y. 1981), *aff'd*, 697 F.2d 287 (2d Cir. 1982) (generally an employee is not barred from competing with his former employer and may solicit customers of his former employer).

In addition, "[c]ourts are disinclined to find tortious interference with an at-will employment contract unless a former employer can show that fraudulent or criminal activity was used in soliciting its employee. *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 444 (E.D.N.Y. 2011). Stripped of hyperbole, and particularly in view of the Declarations submitted by Defendants and on behalf of non-party SEBCO, Plaintiff fails to make a showing that Sal or Latoya

9

are engaging in any fraudulent or criminal activity in purportedly soliciting its employee. Simply put, it is not wrongful for SEBCO to hire – or to have hired - employees who choose to resign from BMA.

If the Court were to grant the injunction sought by Plaintiff, it would challenge New York's strong public policy of people being able to engage in business that is most suitable to them. *See, e.g., Stamack, Inc. v. Romero*, No. 0118875/2006, 2007 WL 2815377 (Sup Ct NY Cty Aug. 08, 2007) (dismissing complaint seeking injunctive relief).

Here, as set forth above and in Sal Decl and the Allen Decl,, there were no restrictive covenants in connection with Sal's or Latoya's employment by BMA. Moreover, they also both state that they are not starting a "competitor" to BMA, but that they are merely continuing to work for SEBCO, which is seeking to take the management function being performed by BMA in-house. Hence, Sal (and Latoya) remain free to assist SEBCO in seeking to bring the management of the HDFC properties in-house. This is especially so in view of the undisputed fact that the 15 Property Owners who have terminated their management contracts with BMA are all independent of Sal (and Latoya) and are, as Plaintiff freely admits, controlled by SEBCO.

As established by the Samuels Decl. and the SEBCO Brief, the Property Owners decisions to terminate their building management agreements with BMA was not the result of any purported "interference" with BMA's business relationships by Sal (or Ms. Allen) in any event. Rather, those decisions were made after careful consideration by SEBCO's Board of Directors and the Boards of each respective Property Owner, as reflected in duly adopted board resolutions. In fact, although Sal holds a seat on SEBCO's Board of Directors, the Declarations and the SEBCO Brief all make clear that Sal recused himself from those decisions and that Latoya had no role.

SEBCO's primary objective in terminating its management agreements with BMA is to

move the management function in-house to SEBCO. SEBCO has also hired certain BMA employees in aid of that management function. Those decisions were largely prompted by certain actions taken by Mr. Luigino Gigante, who has no prior property management experience, and attorney Irwin Seigel, on behalf of BMA, which have made the ongoing management relationships untenable, have intimidated and demoralized employees, and have threatened SEBCO's very survival. It appears that BMA is attempting, through this action and the instant Motion, to prevent non-party SEBCO from exercising its contractual and legal right to terminate the management agreements, hire employees, and transition to self-management.

Because Plaintiff cannot establish a likelihood of success on the merits, or even "sufficiently serious questions going to the merits," injunctive relief is not appropriate in this case and the Motion must be denied for that reason as well.

## IV. THE BALANCE OF THE HARDSHIPS DOES NOT TIP DECIDEDLY IN PLAINTIFF'S FAVOR

As set forth above, Plaintiff will suffer mere potential economic harm, not irreparable harm absent the entry of a temporary restraining order or preliminary injunction, *i.e.*, the loss of a some of its customers and some employees – and not due to any wrongful acts of Defendants. By contrast, as set forth in the Sal. Decl., the Samuels Decl., and the SEBCO Brief, SEBCO would face irreparable harm were Sal to be prohibited from doing his job for SEBCO and SEBCO be prohibited from moving the management of the HDFC affordable housing units that are owned by 15 Property Owners in-house and working with the established vendors and personnel needed to effectively perform that management role, despite with express wishes of SEBCO's Board and the boards of those Property Owners that BMA be removed as manager.

SEBCO and the Property Owners will suffer irreparable reputational harm and loss of goodwill if enjoined from being able to move the management function in-house and away from

BMA and the inexperienced "leadership" of Gino Gigante, at the very least in the eyes of at least the tenants of the HDFC affordable housing units who are being ill-served by BMA. It is beyond cavil that harm to reputation and loss of goodwill constitutes irreparable harm. *Reuters Ltd. v. United Press Int'l, Inc*., 903 F.2d 904, 908-908 (2d Cir. 1990); *Jacobson & Co. v. Armstrong Cork Co*., 548 F.2d 438, 444–45 (2d Cir.1977).

As such, the balance of the equities militates against the issuance of injunctive relief and denial of the Motion as well.

## V. THE PUBLIC INTEREST WOULD BE DISSERSED BY THE ENTRY OF A TEMPOIRARY RESTRAINING ORDER OR A PRELIMINARY INJUNCTION

"[A] court must ensure that the proposed injunction will not harm the public interest." *Home It, Inc. v. Wen*, 2020 WL 353098, at *6 (E.D.N.Y. Jan. 21, 2020). There is a well-recognized public interest in the freedom of contract. "[T]he public interest is served by the enforcement of parties' rights under their contract...." *GE Transp. (Shenyang) Co. v. A-Power Energy Generation Sys., Ltd.*, No. 15 Civ. 6194 (PAE), 2016 WL 3525358, at *9 (S.D.N.Y. June 22, 2016).

Here, the Property Owners have a contractual right to terminate their agreements with BMA. The public interest would be disserved if the Court were to abrogate those rights by the entry of a TRO or preliminary injunction that prohibits them from doing so. Moreover, every additional day that the management of the HDFC affordable housing units remains in the inexperienced, unsteady hands of Gino Gigante will deleteriously affect the quality of the management and the lives of the people living in the those properties.

As such, the public interest also weighs against the grant of any injunctive relief to Plaintiff.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion should be denied in all respects, along with such other and further relief as the Court deems just and proper.

Date: New York, New York
February 22, 2023

**COX PADMORE SKOLNIK & SHAKARCHY LLP**

By: _____/s/ *Stefan Kalina*_____
Stefan B. Kalina, Esq.
Joseph B. Teig, Esq.
630 Third Avenue, 23rd Floor
New York, NY 10017
Tel: (212) 953-6633
Fax: (212) 949-6943
Email: kalina@cpsslaw.com
teig@cpsslaw.com
*Attorneys for Defendant*
*Salvatore Gigante*

TO: Daniel L. Kurtz, Esq.
Matthew Barkan, Esq.
Stephanie Paola Chery, Esq.
Shveta Kakar, Esq.
**PRYOR CASHMAN LLP**
7 Times Square
New York, NY 10036-6569
Tel: (212) 421-4100
Fax: (212) 326-2061
Email: dkurtz@pryorcashman.com
mbarkan@pryorcashman.com
schery@pryorcashman.com
skakar@pryorcashman.com
*Attorneys for Plaintiff*
*Building Management Associates, Inc.*

13

Timothy J Pastore, Esq.
**MONTGOMERY MCCRACKEN WALKER & RHOADS LLP**
437 Madison Avenue
New York, NY 10022
Tel: (212) 551-7707
Fax: (212) 599-5085
Email: tpastore@mmwr.com
*Attorneys for Defendant*
*Latoya Allen*

Nicole Hyland, Esq.
**FRANKFURT KURNIT KLEIN & SELZ PC**
28 Liberty Street
New York, NY 10005
Tel: (212) 826-5552
Email: nhyland@fkks.com
*Attorneys for Interested Party*
*SEBCO Development, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing DEFENDANT SALVATORE GIGANTE'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION AND DECLARATION OF SALVATORE GIGANTE were electronically served on all counsel of record in the above-captioned matter by the CM/ECF system on this 22nd day of February, 2023.

**COX PADMORE SKOLNIK & SHAKARCHY LLP**

By: _____/s/ Stefan Kalina_____
  Stefan B. Kalina, Esq.
  Joseph B. Teig, Esq.
630 Third Avenue, 23rd Floor
New York, NY  10017
Tel: (212) 953-6633
Fax: (212) 949-6943
Email: kalina@cpsslaw.com
     teig@cpsslaw.com
*Attorneys for Defendant Salvatore Gigante*